**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

-and-

JOSEPH H. MELTZER
jmeltzer@ktmc.com
SAMANTHA HOLBROOK
sholbrook@ktmc.com
280 King of Prussia Rd
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610 667-7056
\* *pro hac vice* to be filed

**GRANT & EISENHOFER P.A.**
JAY W. EISENHOFER
jeisenhofer@gelaw.com
OLAV A. HAAZEN
ohaazen@gelaw.com
KYLE J. MCGEE
kmcgee@gelaw.com
485 Lexington Ave
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
\* *pro hac vice* to be filed

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| GUILHERME RAFAEL CANOA DE OLIVEIRA,<br><br>              Plaintiff,<br><br>   v.<br><br>APPLE, INC.,<br><br>              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. JURISDICTION AND VENUE ........................................................................................... 2

III. PARTIES ............................................................................................................................... 3

IV. FACTUAL ALLEGATIONS ................................................................................................ 4

V. CLASS ALLEGATIONS ...................................................................................................... 8

VI. CAUSES OF ACTION ........................................................................................................ 12
   COUNT ONE .......................................................................................................................... 12
   COUNT TWO ......................................................................................................................... 13

VII. REQUEST FOR RELIEF .................................................................................................... 15

VIII. Jury Demand ....................................................................................................................... 15

Plaintiff Guilherme Rafael Canoa de Oliveira ("Plaintiff"), by and through his undersigned counsel, based on personal knowledge as to himself, and on information and belief as to all other matters, including through the investigation of counsel, individually and on behalf of all others similarly situated, alleges as follows:

## I.    INTRODUCTION

1. According to Apple, Inc. ("Apple" or "Defendant"), its iPhone smartphones represent the pinnacle of consumer electronics in general and smartphones in particular. The iPhone is an enormously popular device with consumers and is Apple's most profitable franchise. Apple sells millions of iPhones worldwide each month, generating billions of dollars in revenue each quarter.

2. Apple introduces new iPhone models on a nearly annual basis, seeking not only to capture new users (first-time purchasers), but also to convince current iPhone users of the necessity of acquiring the latest model. A key driver of iPhone sales, including sales of "upgraded" models to existing iPhone users, is Apple's purported ability to continuously improve the performance and capabilities of iPhones. To this end, Apple regularly publishes software upgrades (or updates) to the iPhone's iOS operating systems with the purported goal of enhancing device performance.

3. The reality, however, is that Apple's iPhone and iOS "upgrades" are not always superior to their predecessors, and both device and software "upgrades" can detract from performance for a host of reasons. To circumvent this truth, Apple has resorted to unfair, deceptive, and fraudulent business practices meant to goad consumers into buying the latest iPhone model. Rather than simply market the virtues of newer models and allow consumers to make an informed choice, Apple opted to coerce consumers into upgrading by aggressively attacking millions of older iPhone models by loading an iOS software update with performance-diminishing code. As a result, millions of iPhone users have traded in their seemingly obsolete models (including iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 7, and iPhone 7 Plus, together the "Subject Devices") for newer, more expensive models, while millions of other iPhone users have suffered (and continue to suffer) materially diminished Subject Device performance.

4. Apple had and has a duty to truthfully disclose to iPhone users that iOS software updates will diminish the performance of their devices *before* rolling out such an update. Nevertheless, Apple only admitted that its iOS updates would negatively impact device performance in late December 2017 after it could no longer deflect the critical mass of consumer complaints. Apple never sought nor obtained the informed consent of iPhone users before installing iOS software upgrades that would intentionally throttle or limit device performance.

5. Plaintiff brings this action individually and on behalf of all non-U.S. residents injured by Apple's misconduct (the "Class," as defined below). All members of the Class are required to accept Apple's "iOS SOFTWARE LICENSE AGREEMENT" which states, *inter alia*, that "[t]his License will be governed by and construed in accordance with the laws of the State of California."[1] Plaintiff seeks monetary and injunctive relief for themselves and the Class, including, *inter alia*, compensation for Apple's unauthorized interference with the use and enjoyment of all Class members' Subject Devices; compensation reimbursing those Class members who bought new iPhone models to replace a Subject Device; compensation reimbursing those Class members who bought a new battery, at any price and at any time, for a Subject Device; compensation reimbursing those Class members who bought a new Subject Device to replace another Subject Device; and an injunction requiring Apple to make any performance-modifying "features" fully optional and configurable by users.

II. **JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(B), because the proposed Class consists of 100 or more members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff is a subject or citizen of a foreign state while Defendant is a California corporation.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Moreover,

---

[1] Apple, Inc., *iOS Software License Agreement* ¶ 12, http://images.apple.com/legal/sla/docs/iOS10.pdf (iOS 10) and http://images.apple.com/legal/sla/docs/iOS11.pdf (iOS 11) (last accessed Jan. 22, 2018).

CLASS ACTION COMPLAINT                                                                                        2

1  Defendant's principal place of business is in Cupertino, California, which is in this judicial district
2  (and within the San Jose Division of this judicial district), and a substantial amount of the conduct of
3  which Plaintiff complains occurred in this district.

4  III.   **PARTIES**

5  8.   Plaintiff Guilherme Rafael Canoa de Oliveira is a resident of São Paulo, Brazil.  He
6  purchased his iPhone 6s on November 17, 2016 in São Paulo.  Plaintiff still owns this device.  As of
7  the date of filing, Plaintiff's device was running iOS 11.2.1.

8  9.   Plaintiff routinely updated his iPhone iOS software when presented with an update by
9  Apple, including iOS 10.2.1 and 11.2.  At no time did Apple disclose to Plaintiff that installing any
10 iOS update, including iOS 10.2.1 and 11.2, would result in any diminution or degradation of device
11 performance, under any condition.  Plaintiff never consented to any diminution or degradation of his
12 device's performance.  Plaintiff has experienced significant performance diminution and battery
13 issues as a result of Apple's performance-diminishing throttling code implanted in iOS 10.2.1 and
14 11.2.

15 10.  Apple is, and since 2010, has been, the world's most valuable company.  In 2017,
16 Apple's market value exceeded $750 billion.  The iPhone is Apple's flagship product line and the
17 principal driver of its market value.

18 11.  Apple designed, manufactured, marketed, and sold all extant iPhones, including
19 Subject Devices, and current models.  Apple also designed, authored, marketed, and distributed iOS
20 and all iOS software updates.

21 12.  Apple's executives are based out of the company's Cupertino headquarters.  For
22 example, both Chief Executive Officer Tim Cook and Apple's chief of software engineering, Craig
23 Federighi, are located in Cupertino.  A substantial portion of Apple's software engineering
24 department is also located in Cupertino.  On information and belief, Apple made all decisions and
25 took all actions complained of herein from Cupertino, or elsewhere within the State of California.
26 Cupertino was also the location from where Apple pushed out the iOS software updates to the rest of
27 the world.

28

CLASS ACTION COMPLAINT                                                                                      3

13. Apple regularly transacts substantial business in the State of California, including designing, authoring, marketing, and distributing iOS software updates, and designing products including all Subject Devices, and other iPhone models. All or substantially all of the misconduct complained of herein occurred in or arose from Apple's decisions and actions in California.

IV. **FACTUAL ALLEGATIONS**

14. On December 28, 2017, Apple published a *mea culpa* on its website disclosing that, as a result of code it intentionally inserted in the iOS 10.2.1 software, "users may experience longer launch times for apps and other reductions in performance."[2]

15. Apple's apology was preceded by a series of damage control maneuvers it advanced in the technology industry press for over a year. iOS 10.2.1 was officially published in January 2017 (with beta versions available in December 2016), and was immediately met with criticism from technology sector publications as well as user complaints.

16. Users and journalists reported that one of the most prominent criticisms following the iOS 10.2.1 update was that the LCD display would go dim involuntarily, Wi-Fi and Bluetooth connectivity would severely diminish or become inoperable, and processing speeds in general would noticeably decrease. In addition, many users and reporters criticized Apple for failing to correct a bug causing iPhones to suddenly crash and shut down when the battery appeared to have more than sufficient life (approximately 30%) to continue normal operations.

17. The "30% battery bug" was first reported in November 2016, prior to the rollout of iOS 10.2.1. This "bug" resulted in iPhones suddenly shutting down when the battery display reported that the battery still had approximately 30% of its power remaining. Apple received thousands of consumer complaints relating to this bug (including a substantial number of complaints on Apple web forums), and the China Consumers Association, a consumer watchdog group for one of the most

---

[2] *A Message to Our Customers about iPhone Batteries and Performance*, Apple, Inc. (Dec. 28, 2017), http://www.apple.com/iphone-battery-and-performance/.

CLASS ACTION COMPLAINT                                                                                  4

severely impacted markets, issued a formal warning to Apple for failing to "meet basic consumer needs for normal wireless communication."[3]

18. In response to the China Consumers Association warning letter, Apple denied that a significant problem existed and denied that any problem extended beyond a small number of iPhone 6s devices manufactured between September-October 2015. According to Apple, components in the batteries in those iPhone devices were exposed to ambient air for too long before being assembled into the battery pack.[4]

19. A former Apple executive, Tony Fadell, reported (via Twitter) that his iPhone—an iPhone 6s Plus, which Apple claimed was unaffected by the bug—was shutting down at the 30% battery mark "every other day."[5] Nevertheless, Apple continued to deny that the bug extended beyond a small number of iPhone 6s devices. Apple recalled the batteries in iPhone 6s devices manufactured between September and October 2015 based on their serial numbers.[6]

20. Apple did not immediately disclose that iOS 10.2.1 contained a "fix" for the 30% battery bug in the form of intentional performance-diminishing throttling. Indeed, because the performance degradation did not stop Subject Devices from crashing and shutting down involuntarily, users were not aware that Apple's iOS updates were *intentionally* diminishing the performance of their devices. As a bug fix, iOS 10.2.1 failed to remedy this issue, and as a performance enhancement, iOS 10.2.1 instead actively undermined device performance.

21. After beta-testing the release for six weeks beginning in October 2017, Apple published iOS 11.2 in early December 2017. This software update did not abate users' concerns over the sluggish performance of Subject Devices. Yet Apple did not respond to criticisms and complaints until December 20, 2017, when it released a statement to *TechCrunch* in which Apple publicly

---

[3] Gordon Kelly, *Apple Warned iPhones Have A Serious Problem*, Forbes (Dec. 2, 2016), http://www.forbes.com/sites/gordonkelly/2016/12/02/china-iphone-battery-warning-to-apple/.

[4] *A Message from Apple about iPhone and Unexpected Shutdowns*, Apple, Inc. (Dec. 6, 2016), http://support.apple.com/zh-cn/HT207414/.

[5] Quoted in Kelly, *Apple Warned iPhones Have a Serious Problem*, *supra*.

[6] *iPhone 6s Program for Unexpected Shutdown Issues*, Apple, Inc. (Nov. 30, 2016), http://www.apple.com/support/iphone6s-unexpectedshutdown/.

disclosed that its iOS 10.2.1 update contained what it called "**a feature** for iPhone 6, iPhone 6s, and iPhone SE" meant to control those devices' tendency to "unexpectedly shut[] down" under certain conditions.[7]  In that statement, Apple confirmed that it had "extended that feature" by incorporating it in iOS 11.2 as well.

22.   Apple's December 20, 2017 disclosure was prompted by a growing chorus of complaints from users and reporters, as well as analyses by computer scientists and other researchers indicating that, in fact, Apple embedded crippling code within iOS itself.  For example, on December 18, 2017, researcher John Poole conducted kernel mapping exercises on multiple iPhone models and multiple iOS versions, and concluded that "Apple introduced a change to limit performance when battery condition decreases past a certain point" in iOS 10.2.1.  Poole observed, correctly, that "[i]f the performance drop is due to the 'sudden shutdown' fix, users will experience reduced performance without notification.  Users expect either full performance, or reduced performance with a notification that their phone is in low-power mode.  This fix creates a third, unexpected state."[8]

23.   Tech blog *9to5Mac* also reported on December 18, 2017, that a software developer, Guilherme Rambo, "has discovered the software system, powerd (short for power daemon), that Apple put in place in iOS 10.2.1.  powerd controls CPU/GPU speed and power.  It also responds to thermal pressure and helps [prevent] iPhones from catching fire."[9]

24.   Coupled with its December 20, 2017 admission that iOS 10.2.1 and 11.2 contain a "feature" expressly designed to degrade device performance, Apple's December 28, 2017 apology and admission that users will experience diminished performance as a result of that feature clearly demonstrates that Apple acted unfairly and with deception in relation to its customers.  Apple has never claimed that it adequately disclosed to users that installing iOS 10.2.1 and 11.2 (or buying

---

[7]   Matthew Panzarino, *Apple Addresses Why People Are Saying Their iPhones With Older Batteries Are Running 'Slower'*, TechCrunch (Dec. 20, 2017), https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-iphones-with-older-batteries-are-running-slower/.

[8]   John Poole, *iPhone Performance and Battery Age*, Geekbench (Dec. 18, 2017), http://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/.

[9]   Michael Potuck, *Geekbench Developer Links iPhone Performance Issues to Battery Age and iOS Updates*, 9to5Mac (Dec. 18, 2017), http://9to5mac.com/2017/12/18/iphone-battery-performance-issues/.

devices with those versions preloaded) would result in diminished device performance, or that users consented to experiencing diminished performance in any fashion, and indeed, they did not.

25. In an attempt to remedy its bad behavior, Apple announced that, through 2018, it would slash the price of battery replacements from $79 to $29 for anyone with an iPhone 6 or later in need of a battery replacement.[10]

26. In making this concession, Apple disclosed that replacing the battery in a Subject Device—at least where such battery is "chemically aged"—would eliminate the voltage deficiency triggering the performance-diminishing "feature" in Subject Devices. Apple also claimed to be developing an iOS software update that would "give users more visibility into the health of their iPhone's battery, so they can see for themselves if its condition is affecting performance," further confirming that Apple had not previously given iPhone users essential information about the performance of their devices and Apple's decision to unilaterally throttle performance.[11]

27. Apple's misconduct—including its decision to surreptitiously incorporate intentionally performance-diminishing code into iOS updates, and its decision to withhold critical information from users, prospective purchasers, and the press—helped buoy iPhone sales throughout 2017. By tempering Subject Device performance, Apple led consumers to believe that those devices had simply become obsolete in comparison to the lightning-fast performance of newer models on display in Apple Stores worldwide, and aggressively promoted in media and advertising.

28. Consequently, many customers purchased new iPhone models to replace Subject Devices, while many others bought replacement batteries at their ordinary retail price to attempt to resolve the intentionally devised performance problems plaguing their Subject Devices. Still other customers owning Subject Devices bought replacement Subject Devices incorrectly believing it was their individual units, rather than the product line, that were defective.

---

[10] *A Message to Our Customers about iPhone Batteries and Performance*, Apple, Inc. (Dec. 28, 2017), http://www.apple.com/iphone-battery-and-performance/ (last accessed Jan. 22, 2018).

[11] *Id.*

29. All such customers suffered a direct monetary loss as a result of Apple's misconduct. Moreover, all Subject Device owners suffered from Apple's intentional interference with the performance of those devices, insofar as their devices experienced performance degradation.

30. The knowledge that Apple had intentionally inserted performance-diminishing throttling code as a "feature" in the Subject Devices, via iOS 10.2.1 and 11.2 (and that the Subject Devices were not merely exhibiting signs of obsolescence), was exclusively available to Apple until it admitted its misconduct in December 2017.

31. The actual performance of throttled Subject Devices stands in marked contrast to the representations Apple used to aggressively promote them. For example, Apple advertised that iPhone 6's A8 chip is "our fastest yet. Its CPU and graphics performance are faster than on the A7 chip, even while powering a larger display and incredible new features. And because it's designed to be so power efficient, the A8 chip can sustain higher performance—so you can play graphics-intensive games or enjoy video at higher frame rates for longer than ever."[12] Similarly, promoting the iPhone 6s's A9 chip, Apple stated, "the A9 chip brings a new level of performance and efficiency to iPhone 6s. Not only a faster experience, but a better one. . . . It sits at the cutting edge of mobile chips, improving overall CPU performance by up to 70% compared to the previous generation."[13]

32. Apple's standard terms and conditions, reflected in the iOS Software License Agreement to which all iPhone users must agree in order to use their devices or install software updates (including iOS 10.2.1 and 11.2), specifies that California law shall apply.[14]

V. **CLASS ALLEGATIONS**

33. Plaintiff brings this action individually and on behalf of all others similarly situated, pursuant to the provisions of Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

---

[12] *Hugely powerful. Enormously efficient.*, Apple, Inc., https://web.archive.org/web/20141001022732/http://www.apple.com/iphone-6/technology.

[13] *Deeply powerful*, Apple, Inc., https://web.archive.org/web/20150926133013/http://www.apple.com:80/iphone-6s/technology/.

[14] *See* note 1, *supra*.

34. The Class includes the following:

> All non-U.S. resident persons or entities who were owners or registered users of a Subject Device (*i.e.*, iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 7, or iPhone 7 Plus) on which iOS 10.2.1 or 11.2 was installed.

35. Excluded from the Class are Apple, its employees, officers, directors, subsidiaries, and affiliates; the judicial officers and their immediate family members and associated court staff assigned to this case; and all persons who make a timely election to be excluded from the Class. Plaintiff reserves the right to modify the Class definition based on information learned in discovery.

36. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

37. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Rule 23.

38. <u>Numerosity</u>. Under Rule 23(a)(1), the members of the proposed Class are "so numerous" and geographically dispersed "that individual joinder of all Class members is impracticable." While Plaintiff is informed and believes that there not less than hundreds of thousands, if not millions, of Class members, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Apple's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, including postal mail, electronic mail, internet postings, and published notice.

39. <u>Commonality and predominance</u>. Under Rule 23(a)(2) and (b)(3), this action involves "questions of law or fact" common to Class members, which "predominate over any questions affecting individual [Class] members," including, without limitation:

  (a) Whether Apple engaged in the conduct alleged herein;

  (b) Whether Apple's alleged conduct constitutes a breach of its identical contractual obligations to all Class members;

CLASS ACTION COMPLAINT                                                                                           9

1  (c) Whether the applicable software license agreement is governed by California law;

2  (d) Whether Apple's conduct violates California law;

3  (e) Whether Apple designed, programmed, manufactured, marketed, and distributed iOS 10.2.1 and 11.2;

4  (f) Whether Apple advised or disclosed to registered users of Subject Devices the fact that such devices are equipped with performance-diminishing throttling features;

5  (g) Whether Apple advised or disclosed to registered users of Subject Devices the fact that it intentionally included performance-diminishing throttling features in iOS 10.2.1 and 11.2;

6  (h) Whether Apple obtained valid consent from registered owners of Subject Devices to install performance-diminishing throttling features;

7  (i) Whether Subject Devices, their batteries, or their operating systems contain defects, including design defects, manufacturing defects, and/or marketing defects;

8  (j) Whether, and if so when, Apple knew about the existence of the alleged defect(s);

9  (k) Whether Apple promoted the Subject Devices as high-performance devices that were more powerful, and more capable of withstanding processing demand, and/or more responsive and faster than they were in fact;

10  (l) Whether Plaintiff and other Class members are entitled to damages, and if so, in what amount; and,

11  (m) Whether Plaintiff and other Class members are entitled to injunctive relief.

40. _Typicality_. Under Rule 23(a)(3), Plaintiff's claims are "typical" of the other Class members' claims because, among other things, all Class members were comparably injured through Apple's wrongful conduct as alleged herein. Moreover, Plaintiff and all Class members are likely to

1  face similar defenses, including defenses grounded on application of California law to non-U.S. residents.

2  41.  <u>Adequacy</u>.  Under Rule 23(a)(4), Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

42.  <u>Injunctive relief</u>.  Under Rule 23(b)(2), Apple has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief, as described below, with respect to the Class as a whole.

43.  <u>Superiority</u>.  Under Rule 23(b)(3), a class action is "superior" to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for Class members to individually seek redress for Apple's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  There are millions of non-U.S. residents in similar or identical positions as Plaintiff.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  Because Apple and Plaintiff, and every other Class member, have all agreed that California law shall apply to govern their disputes relating to the performance-diminishing software at the center of this litigation, the only alternative to a class action is for individual Class members to file individual actions in California courts, putting an unreasonable and indeed likely unbearable burden on the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

VI.     **CAUSES OF ACTION**

**COUNT ONE**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

44.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

45.     Plaintiff brings this Count individually and on behalf of the Class.

46.     Under California law, all contracts or agreements contain an implicit promise of good faith and fair dealing. Pursuant to this covenant, a party to a contract may not do anything to deprive other parties to the contract of the benefits of the contract.

47.     In its commercial relationships with its customers, including Plaintiff and the other Class members, Apple has asymmetrical power affecting the rights of those customers.

48.     Apple entered into a contract with Plaintiff and the other Class members at the time of purchase of each Subject Device, and at the time Apple furnished Plaintiff and the other Class members with licenses of iOS 10.2.1 and 11.2. The purpose of these contracts included Plaintiff's and the other Class members' receipt of premium, high-performing mobile devices and attendant operating system software.

49.     Apple promised in the iOS 10.2.1 and 11.2 software updates to fix bugs and enhance device performance, but secretly introduced performance-diminishing throttling code.

50.     Plaintiff and the other Class members did all or substantially all of the things that their contracts with Apple required them to do.

51.     All conditions for Apple's performance under its contracts with Plaintiff and the other Class members occurred or were excused.

52.     By surreptitiously and intentionally introducing performance-diminishing throttling code into Subject Devices, via iOS 10.2.1 and 11.2, registered to Plaintiff and the other Class members, Apple unfairly interfered with Plaintiff's and the other Class members' right and ability to receive the benefits of their contracts with Apple.

53. Apple's conduct evaded and undermined the spirit of the contracts or agreements made by and between Apple and Plaintiff and other Class members.

54. As a result of Apple's misconduct and breach of the covenant of good faith and fair dealing, Plaintiff and the other Class members suffered damages in amounts to be proven at trial.

## COUNT TWO

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

55. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

56. Plaintiff brings this Count individually and on behalf of the Class.

57. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), "any unlawful, unfair, or fraudulent business act or practice" is prohibited.

58. Apple's actions, decisions, policies, and conduct, as alleged herein, were undertaken or performed in, and therefore emanate from, California.

59. Apple's conduct violates the unfair prong of the UCL. An act or practice is unfair if either: (a) the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have avoided; (b) the act or practice offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or (c) the public policy which is a predicate to the action is tethered to specific constitutional, statutory, or regulatory provisions.

60. Apple's conduct violates the unfair prong proscriptions. Plaintiff's injuries include monetary loss resulting from Apple's misconduct, as alleged above, as well as materially degraded performance of Subject Devices. Apple can point to no countervailing benefit to consumers or competition, since it failed to disclose to consumers that it was throttling the performance of their devices in the first place, and its conduct is a blatant attempt to seize more market terrain from competitors. Moreover, Apple's conduct offends the established policy of truth in the marketplace and transparency between vendors and consumers, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1  61. Apple's year-long campaign of silence and deceit in the face of users and reporters
2  inquiring and complaining about the 30% battery bug, and rapidly deteriorating device performance
3  after installation of iOS 10.2.1, demonstrates that Apple sought to brush the defect under the rug,
4  avoiding scrutiny from competitors and consumers alike, to extract an unfair competitive advantage.

5  62. Had Plaintiff and the other Class members known that Apple would engage in the
6  alleged misconduct, they would not have purchased their Subject Devices, or would not have replaced
7  Subject Devices with newer iPhone models or other Subject Devices, or would not have paid full
8  price for replacement batteries.

9  63. Pursuant to the UCL's unfair prong, Plaintiff and the other Class members seek to
10 enjoin further unfair acts or practices by Apple, and restitutionary relief.

11 64. Apple's conduct also violates the fraud prong of the UCL. Apple succeeded in
12 convincing Plaintiff and the other Class members to install iOS 10.2.1 and 11.2 by making false
13 statements and fraudulent omissions concerning the contents of those software updates. Apple did
14 not disclose that these software packages contained performance-diminishing throttling code—as an
15 intentionally included "feature"—until December 2017. Consequently, consumers purchased new
16 iPhones (whether similar or upgraded models) due in part to the false impression created by Apple,
17 that such devices were exhibiting signs of obsolescence, when in fact Apple was throttling them.

18 65. Likewise, Apple sold new iPhones containing the same software to consumers who
19 did not previously own an iPhone, making the same promotional representations as to the speed,
20 processing power, and capacity for high performance of iPhones, and the same omissions (*i.e.*, that
21 the Subject Devices contain intentionally inserted performance-diminishing throttling code), as it did
22 to repeat or replacement purchasers.

23 66. Plaintiff and the other Class members seek to enjoin further fraudulent acts or practices
24 by Apple, and restitutionary relief.

25 67. Pursuant to the UCL, Plaintiff and the Class seek entry of such orders or judgments as
26 may be necessary to enjoin and prohibit Apple from continuing its unfair and fraudulent practices as
27 described herein, and to restore to Plaintiff and the other Class members all money that it acquired or
28

retained by way of unfair or fraudulent acts or practices, including restitution and restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A. Certification of the Class as requested, including appointment of Plaintiff as Class representative and appointment of Plaintiff's counsel as Class counsel;

B. Damages, including consequential and punitive damages, restitution, disgorgement of profits, and penalties, in amounts to be proven at trial;

C. Injunctive relief, including restitution, disgorgement, and such orders as are necessary to prohibit Defendant from continuing the unfair, deceptive, and/or fraudulent business acts or practices alleged herein;

D. Pre- and post-judgment interest on all amounts awarded; and,

E. Such other and further relief as may be appropriate.

## VIII. JURY DEMAND

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: February 2, 2018               Respectfully submitted,

**KESSLER TOPAZ MELTZER
 & CHECK, LLP**

*/s/ Eli R. Greenstein*
ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:   (415) 400-3000
Fax:   (415) 400-3001

-and-

JOSEPH H. MELTZER
jmeltzer@ktmc.com
SAMANTHA HOLBROOK

sholbrook@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel:	(610) 667-7706
Fax:	(610) 667-7056

**GRANT & EISENHOFER P.A.**
JAY W. EISENHOFER
jeisenhofer@gelaw.com
OLAV A. HAAZEN
ohaazen@gelaw.com
KYLE J. MCGEE
kmcgee@gelaw.com
485 Lexington Ave
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501